J-A11045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.E.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.E.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 92 MDA 2017 |

Appeal from the Decree December 13, 2016
In the Court of Common Pleas of Berks County
Orphans' Court at No(s):  84887

BEFORE:   SHOGAN, MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 26, 2017**

Appellant, C.E.M. ("Father"), files this appeal from the Decree entered on December 13, 2016, in the Berks County Court of Common Pleas granting the petition of J.H.W. ("Mother") and W.R.W. ("Stepfather") and involuntarily terminating Father's parental rights to his daughter, C.E.M. ("Child"), born in July of 2009, pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).  After review, we affirm the trial court's decree.

The relevant factual and procedural history is as follows:  Mother and Father are the biological parents of Child, and pursuant to a custody order dated December 3, 2010, Mother was awarded primary physical custody while Father received supervised partial physical custody of the Child.  ***See***

_____

[*] Former Justice specially assigned to the Superior Court.

Respondent's Exhibit 1. Although Father previously saw Child regularly, he last exercised his right to physical custody and saw Child on October 31, 2014.[1] Notes of Testimony ("N.T."), 12/13/16, at 6-7.

On June 16, 2016, Mother and Stepfather filed a petition to terminate involuntarily the parental rights of Father as to Child pursuant to 23 Pa.C.S. 2511(a)(1) and (b).[2] The trial court conducted a hearing with regard to the termination petition on December 13, 2016. Mother and Father both testified on their own behalf. In addition, Father presented the testimony of his attorney in the related custody matter and his sister, A.C.W. The court also heard from the guardian *ad litem*, Susan N. Denaro, Esquire.[3]

_____

[1] Mother testified to facilitating Father's custody and transporting Child, despite the order providing the opposite, for a period of approximately two years prior to that time. N.T. at 7-8. Father conversely suggested that he saw Child every day during this two-year period. *Id.* at 48, 65.

[2] Mother and Stepfather married on September 17, 2016. *Id.* at 5.

[3] The guardian *ad litem* submitted a report in favor of termination of Father's parental rights to Child. *See* Guardian *Ad Litem* Report, 11/14/16. At the hearing, she testified that nothing she heard changed her opinion. N.T. at 105-06. She additionally submitted a brief in favor of this position on appeal. *See* Guardian *Ad Litem's* Brief. We note here that in a divided decision our Supreme Court recently held in ***In re Adoption of L.B.M.***, ____ Pa. ____, 156 A.3d 1159 (2017) that 23 Pa.C.S.A. § 2313(a) requires a trial court to appoint counsel for a child in contested involuntary termination of parental rights proceedings. Justice Wecht, joined by Justices Donohue and Dougherty, sought to hold that a trial court is required to appoint separate, independent counsel to represent a child's legal interests even where the guardian *ad litem* is an attorney. However, Chief Justice Saylor and Justices Baer, Todd, and Mundy disagreed in separate concurring and dissenting opinions with that portion of the lead Opinion's holding. In sum, while the latter four Justices agreed that the trial court must appoint counsel to
*(Footnote Continued Next Page)*

Following the hearing, on December 13, 2016, the trial court entered a decree involuntarily terminating the parental rights of Father.[4] On January 10, 2017, Father, through appointed counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

1. Did the lower court err by terminating [Father's] parental rights?

2. Was the evidence presented by [Mother and Stepfather] insufficient to support the lower court's decision to terminate [Father's] parental rights?

3. Was the evidence presented insufficient to show that [Father] by conduct continuing for a period of a least six months immediately preceding the filing of the petition had either shown a settled purpose of relinquishing parental claim to the child or refused or failed to perform parental duties as required by 23 Pa.C.S.A. Section 2511(a)(1), the only ground for termination alleged by [Mother and Stepfather]?

*(Footnote Continued)* ───────────────────

represent a child in all contested involuntary termination hearings, they did not join that portion of Justice Wecht's Opinion that sought to hold a guardian *ad litem* never may serve as the child's counsel. Herein, Father did not raise before the trial court any concerns which would have created a need to appoint independent counsel to advocate for Child, nor does he make any claims on appeal that the guardian *ad litem* did not properly represent Child's legal and best interests due to a conflict of interest. Indeed, in this case, Attorney Denaro zealously represented Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

[4] This decree memorialized the decision the court placed on the record at the conclusion of the hearing.

J-A11045-17

> 4. Was the evidence insufficient for the lower court to make a determination under 23 Pa.C.S.[] Section 2511(b)?

Father's Brief at 1 (unnecessary capitalization omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M. II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), as well as (b). This Court has long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a)

as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We, therefore, analyze the court's termination order pursuant to Subsections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first examine the court's termination of Father's parental rights under Section 2511(a)(1). We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to

relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

As it relates to the crucial six-month period prior to the filing of the petition, this Court has instructed:

> [I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa.Super. 1999) (citations omitted). This requires the Court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B.,*

*N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872

A.2d 1200 (2005) (citation omitted).

> Further, we have stated:

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa.Super. 2010) (citation omitted). *See*

*also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa.Super 2008) (*en*

*banc*).

> Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and

must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (internal citations omitted).

In the instant matter, in finding grounds for termination of Father's parental rights pursuant to Section 2511(a)(1), the trial court concluded:

> Father has not seen Child since October 31, 2014. Even before that time, he relied upon Mother to arrange visits and transport Child to him. Father has not paid support for years, with the exception of a $95 garnishment that the Domestic Relations Office was able to secure sometime in late 2015. Father has not tried to call Child and has not sent any letters, cards, or gifts to Child. Although Mother moved in June 2015, Father has always known her telephone number and her parents' address. Finally, Mother testified that although she saw Father at support conferences, Father never asked about Child.
>
> Father did file for modification of the custody order on May 31, 2016. There was conflicting testimony about whether this was filed before or after Father knew that Stepfather wanted to adopt Child. Based upon [Mother and Stepfather's] retaining counsel in April 2016 to begin the adoption process and the supporting testimony about the steps taken to attempt an amicable resolution to the matter, the Court finds that Father was aware that [Mother and Stepfather] wanted to terminate his parental rights when he sought counsel and filed his petition for modification.
>
> Father testified that he suffered from a variety of medical conditions that caused him to be bedridden both prior to and after October 31, 2014. He was hospitalized at times. He was too ill to work. He did not want Child to see him in such poor condition. He testified that he was no longer bedridden as of spring 2015 and that his condition further improved around March or April 2016 such that he is now medically stable. He indicated that he texted Mother to resume contact starting in 2015, but he did not attempt to obtain counsel or seek to

enforce the custody order. He also incredibly testified that he was seeing Child daily prior to October 31, 2014 due solely to Mother's driving an hour each way even though she worked until 6:30 p.m.

It is clear that Father has failed to perform his parental duties for well more than six months, and, in fact, for two years. He thought only of himself. The [c]ourt doubts that he ever had the kind of contact with Child that he claims to have had, and after October 2014 had no contact at all. His illnesses, even if as bad as he claimed, were no excuse for losing touch with Child and apparently, based on his own testimony, did not bar him from resuming contact, at least as far back as spring 2015. It seems to the [c]ourt that Father's failing to perform parental duties was simply a matter of convenience for him.

Trial Court Opinion ("T.C.O."), 1/25/17, at 3-5.

Further, as the court stated on the record at the conclusion of the hearing:

[Father] -- I never asked you how far you went in school, but common sense would have dictated to me, had I been in your position, to vigorously pursue litigation in this matter, especially when you came to understand that this was going nowhere, but as far as I'm concerned, immediately after you recovered your strength sometime early 2015, and you did nothing for most, if not all, of a year. There was [sic] so many things you could have consulted about with your counsel, who apparently still is your counsel, to obviate what I'm deciding today, which is that your rights are forever terminated effective immediately.

N.T. at 109.

Father, however, argues that the evidence offered by Mother and Stepfather is insufficient to establish grounds for the termination of his parental rights pursuant to Section 2511(a)(1). Father's Brief at 8-9. Further, Father suggests that the totality of the circumstances and

- 10 -

explanations offered are in contravention to a finding of termination of his parental rights. *Id.* at 9-11. Father points not only to his illness, but the alleged obstructionist actions of Mother. *Id.* at 10-11. Moreover, Father maintains that he took affirmative steps evidencing a desire to enforce his parental rights to Child. *Id.* at 11-12. He asserts

> that his filing the custody petition before the filing of the termination petition should be sufficient in and of itself to show that he had not evidenced a settled purpose of relinquishing his parental claim to the child. In the case of In re: Adoption of R.J.S., 901 A.2d 502 (Pa. Super. 2006) the Court said the father there had shown a settled purpose of relinquishing his parental claim or failed to perform parental duties, relying heavily on the father's failure to take any concrete steps to modify the custody order. In the present case, however, Father actually took the step, despite his illness and his lack of money, to secure an attorney and file a petition to modify custody weeks before [Mother and Stepfather] filed the termination petition. See also In re B.[,]N.M., supra, where the court said the six months immediately preceding the filing of the termination petition is the most crucial to analysis in a termination case, citing In re D.J.S., 737 A.2d 283 (Pa. Super. 1999)[.]

*Id.* at 12. Father continues and summarizes as follows:

> Father's filing of his petition to modify custody within the six months immediately prior to the filing of the termination petition shows clearly that he did not exhibit a settled purpose of relinquishing his parental claim, but rather that he was taking direct action to re-establish a parental role with his daughter within a reasonable time, taking into account the totality of the circumstances. Father also argues that the filing of the termination petition after he filed the petition to modify custody was done primarily as another means Mother used to deny Father contact with his child, and to obviate Father's petition to modify custody. Father believes this again fits the pattern established by Mother of denying [Father] visitation.

In summation, Father argues that his filing of the petition to modify custody within the six months immediately preceding the filing of the petition to involuntarily terminate his parental rights showed clearly that he had not evidenced a settled purpose of relinquishing his parental rights to the child. Secondly, Father's attempts to perform parental duties with his child were basically impossible because of his on-going illness and Mother's pattern of thwarting his visitation. Father tried to work things out in a civil matter without taking court action. However, Father did file the petition to modify custody, and Father argues that he filed the custody petition in a reasonable time frame under the circumstances. Therefore, Father believes the evidence was not sufficient to terminate his parental rights under 23 Pa.C.S.A. Section 2511[(a)(1)].

*Id.* at 13-14.

Upon review, we find the trial court's determinations are supported by competent evidence in the record. The record reveals a lack of support and contact between Father and Child since October 31, 2014. N.T. at 6, 8-9. Father suffered from uncontrolled Type 1 diabetes, gastroparesis, and neuropathy for which he was bedridden for six months. *Id.* at 50, 67-68. During such time, he did not think it was appropriate for Child to see him. *Id.* at 57-58. However, in the spring of 2015, his condition began to improve and he was well enough to see and desired to see Child. *Id.* at 72, 74. Nonetheless, Father did not attempt to exercise his custodial rights and/or enforce the custody order until a year later. Father testified to requests at support hearings, phone calls, and text messages, which Mother disputed. *Id.* at 14, 68, 74.

Mother stated that it was only after sending a letter with respect to the voluntary termination of his parental rights that Father texted her seeking

contact with Child. *Id.* at 9. Moreover, Father did not file a petition to modify the custody order until May 31, 2016, after Mother had begun to seek to terminate his parental rights. *Id.* at 15-17, 19. *See* Petitioner's Exhibit 1; Respondent's Exhibit 2. In the meantime, Father sent no cards or gifts to Child.[5] *Id.* at 9, 69. Thus, as the trial court's determinations regarding Section 2511(a)(1) are supported by competent, clear and convincing evidence in the record, we discern no abuse of discretion and will not disturb them. *See In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013); *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003). As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b). *In re B.L.W.*, 843 A.2d at 384.

We next determine whether termination was proper under Section 2511(b). Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M.*

---

[5] Although Mother moved during this time-period and did not provide Father her address due to a prior Protection from Abuse order, Father had her phone number, which remained the same, as well as her parents' address and phone number. *Id.* at 6, 12, 69.

> ***a/k/a L.C., Jr.]***, [533 Pa. 115, 123, 620 A.2d 481, 485 1993)],
> this Court held that the determination of the child's "needs and
> welfare" requires consideration of the emotional bonds between
> the parent and child. The "utmost attention" should be paid to
> discerning the effect on the child of permanently severing the
> parental bond. ***In re K.M.***, 53 A.3d at 791. However, as
> discussed below, evaluation of a child's bonds is not always an
> easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "[I]n cases where there is

no evidence of a bond between a parent and child, it is reasonable to infer

that no bond exists. Accordingly, the extent of the bond-effect analysis

necessarily depends on the circumstances of the particular case." ***In re***

***Adoption of J.M.***, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use

expert testimony. Social workers and caseworkers can offer evaluations as

well. Additionally, Section 2511(b) does not require a formal bonding

evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal

citations omitted).

In the case *sub judice*, in reasoning that termination of Father's

parental rights favors Child's needs and welfare under Section 2511(b) of

the Adoption Act, the trial court stated:

> It is also clear that termination of Father's parental rights
> is in the best interests of Child. Any bond that might have
> existed between Father and Child was prior to October 2014 and
> Father did nothing to maintain it. Child does not ask or talk
> about Father.
>
> Child is bonded with Stepfather. Child calls him "dad" or
> "daddy." She wants him to be home and does not like when he
> goes on overnight trips. Stepfather has a good relationship with
> Child – he can identify her favorite foods, he taught her how to

- 14 -

ride [a] bicycle, he helps her with her homework, and they play, fish, and hunt together. All of Child's developmental, physical, and emotional needs are met by Mother and Stepfather. There is no need to disturb this environment and no need to interject Father into it.

T.C.O. at 5.

To the contrary, Father argues that while Mother and Stepfather offered only minimal evidence as to any bond between Child and him and suggested Child's emotional bond was with Stepfather, both he and his sister, paternal aunt, testified regarding the time Father and Child spent together and their relationship. Father's Brief at 15. Father also challenges the guardian *ad litem's* decision not to interview Child.[6] *Id.* at 16.

Notwithstanding Father's claims, the record corroborates the trial court's termination orders pursuant to Section 2511(b). As indicated, Father has not seen Child since October 31, 2014. In addition, the only financial support Father had provided for Child in the recent past was a ninety-five

---

[6] To the extent that Father raises the guardian *ad litem's* failure to interview Child, we find this issue is waived as Father failed to raise it below in questioning the guardian *ad litem* during the hearing. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) (stating that "in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted).

dollar garnishment over a year prior to the hearing. N.T. at 8-9. Further, when questioned about whether Child ever asks about Father, Mother responded, "Not at all. She doesn't mention his name. She doesn't ask about him. Nothing." *Id.* at 10. Therefore, there is no evidence of the existence of any current bond between Father and Child.

Moreover, and more importantly, Mother described Child's positive, nurturing relationship with Stepfather. *Id.* Specifically, Mother explained Child has flourished since meeting Stepfather: "She -- before I introduced her to my husband, she was very closed, wouldn't talk to strangers at all. Now she's doing awesome. She'll talk to people. She's -- her grades have improved dramatically in school. She's so eager to do stuff, it's crazy." *Id.* Mother further indicated that Child exhibits an emotional bond with Stepfather. *Id.* As expressed by Mother, "She calls him daddy. She will go to him for anything and everything. She gets upset if he goes on an overnight hunting trip because she doesn't want him to leave. She wants him to stay home." *Id.*

Thus, as confirmed by the record, termination of Father's parental rights serves Child's needs and welfare. While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. As this Court has stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the

custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (b). We, therefore, affirm the Decree of the trial court.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017